## Vitek v. Wilcox
*[Cite as 8 AOA 283]*

*Case No. WM89 000004*
*Williams County, (6th)*
*Decided November 9, 1990*

*Marc G. Williams-Young and Susan E. Byrne, for Appellant.*

*Michael W. Spangler, for Appellees, Rodney and Sharon Hartsock.*

*Steven R. Bird, for Appellees, John and Elsie Shimp.*

*David P. Rupp, Jr., for Appellees, Robert and Beverly Gotshall and Charles A. Nicolen.*

ABOOD, J.

This is an appeal from a judgment of the Williams County Court of Common Pleas which denied plaintiff-appellant's motion for leave to file a second amended complaint and granted summary judgment in favor of defendants-appellees Robert and Beverly Gotshall, dba The Bar, John and Elsie Shimp, dba Shimp's aka Unique Buffet, and Rodney and Sharon Hartsock, dba Doubletree, and dismissed appellant's claims against them. Appellant has appealed setting forth two assignments of error:

"I. THE TRIAL COURT COMMITTED RE-VERSIBLE ERROR IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT.

"II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS GOTSHALLS, SHIMPS, AND HARTSOCKS, THEREBY DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AS TO EACH DEFENDANT."

The facts giving rise to the issues on appeal are as follows. In the early morning hours of October 5, 1986, appellant's decedent, Eugene L. Kreischer, who had been a patron at an establishment called The Bar, was involved in two altercations. The first was with the bartender at The Bar, Charles Nicolen, who ejected him from the bar at cloning time, approximately 2:30 a.m. The other was with appellee Eddie Wilcox, a minor, who had patronized several establishments that night, including The Bar, Shimp's Unique Buffet, and the Doubletree, and who struck the decedent in the jaw causing him to hit his head on the pavement. The decedent subsequently died.

On October 5, 1987, appellant, individually and as the personal representative of the decedent, filed a wrongful death action against appellees Eddie Ray Wilcox, Jr., Charles Nicolen, Robert and Beverly Gotshall, dba The Bar, Rodney and Sharon Hartsock, dba Doubletree, and John and Elsie Shimp, dba Shimp's aka Unique Buffet.[1] In her complaint, appellant alleged that the decedent, while a patron at The Bar, became intoxicated; that Nicolen knowingly continued to serve decedent intoxicated beverages notwithstanding the fact that the decedent was noticeably intoxicated; and, that decedent habitually drank intoxicating liquor in excess. The complaint alleged further that appellee Nicolen ejected decedent from The Bar and, while doing so, kicked and beat him causing severe physical injury and pain and causing him to lose physical and mental control of himself. The complaint alleged further that on that same morning appellee Wilcox was a patron of The Bar, Doubletree and Shimp's, became intoxicated and, upon observing decedent's ejection from The Bar, walked across the street and struck him, knowing him to be intoxicated and in a weakened physical and mental condition; as a result of being beaten, kicked and struck, decedent fell to the ground, struck his head and ultimately died. Appellant's complaint set forth seven separate causes of actions against appellees. In her first cause of action, appellant alleged that the negligence of appellee Nicolen caused decedent serious physical harm, pain, suffering and medical expenses. In her second cause of action, appellant alleged that the negligence of .appellee Wilcox caused decedent serious physical harm, pain, suffering and medical expenses. In her third cause of action, appellant alleged that appellee Nicolen's actions constituted an assault and battery on decedent without just cause or provocation causing decedent serious physical harm, pain, suffering and medical expenses. In her fourth cause of action, appellant alleged that appellee Wilcox's actions constituted an assault and battery on decedent without just cause or provocation causing him serious physical harm, pain, suffering and medical expenses. In her fifth cause of action, appellant alleged that appellee Nicolen, in serving and continuing to serve decedent in his noticeably intoxicated state, violated R.C. 4301.22(B) and (C) causing decedent to become inebriated, lose control and to sustain injury causing his death. In her sixth cause of action, appellant alleged that appellees Robert and Beverly Gotshall, owners of The Bar, employed appellee Nicolen as a bartender knowing him to be prone to violence and negligence in his conduct towards patrons, therefore, rendering them vicariously liable for his negligent and intentional acts committed within the scope and course of his employment. In her seventh cause of action,

appellant alleged that appellees Robert and Beverly Gotshall, Rodney and Sharon Hartsock and John and Elsie Shimp were all negligent in wrongfully serving intoxicated beverages to Wilcox, in violation of R.C. 4301.69 and 4399.18, causing him to become inebriated and violent and thereby negligently and wrongfully cause the death of decedent.

All of the appellees, with the exception of Wilcox, filed answers to the complaint. On November 30, 1988, a pretrial order was issued setting a discovery cutoff of February 28, 1989, and a motion cutoff of March 17, 1989. On February 23, 1989, appellant filed a motion, pursuant to Civ. R. 15, for leave to file a second amended complaint stating that certain facts were brought to her attention following the service of the first two complaints and, therefore, it was necessary to amend her complaint to conform the pleadings to the evidence that would be presented at trial. Specifically, appellant's request was to change the party defendants to reflect the proper ownership of The Bar. In support of her motion, appellant stated that on October 22, 1987, she had been advised by the attorney for the Gotshalls that the Montpelier Tavern Company, a corporation of which the Gotshalls were the sole shareholders, owned and operated The Bar and was, therefore, the proper party-defendant. Appellant argued that the Gotshalls were, as the sole shareholders of that corporation, authorized to and did receive actual notice of the action prior to the running of the statute of limitations so as to eliminate any prejudice to the Montpelier Tavern Company in its defense. On April 10, 1989, the Gotshalls filed a memorandum in opposition to appellant's motion for leave to amend her complaint arguing that appellant had been advised by letter in October 1987 that the corporation was the real party in interest and that their answers to interrogatories filed on May 3, 1988, included a copy of the liquor license which had been issued to the corporation. The Gotshalls submitted that appellant had neglected to seek leave to amend the complaint to have the corporation named as a party until February 23, 1989, four and one half months after the statute of limitations had run and sixteen months after they had first received notice of that fact, and, therefore, by her actions, failed to satisfy the requirements of Civ. R. 15. Finally, the Gotshalls submitted that, while Civ. R. 15(C) is intended to prevent a defendant from profiting from a plaintiff's mistake, here there was no mistake since appellant was aware of the proper party-defendant and had had sufficient time to amend the complaint long before the statute of limitations had run.

On March 31, 1989, a hearing was held on appellant's motion for leave to amend her complaint. At the hearing, the trial court found that the cause of action had accrued on October 5, 1986, the original complaint had been filed on October 5, 1987, the first amended complaint had been filed on October 22, 1987, and the motion for leave to amend the complaint was filed on February 23, 1989, twenty-eight months after the cause of action arose and four and one-half months after the statute of limitations had run. The trial court also found that appellant had been notified by letter dated October 21, 1987, and by answers to interrogatories filed May 3, 1988, that the Montpelier Tavern Company was the real party in interest. The trial court also noted that the trial was set for June 12, 1989, and that appellant had set forth no good reason for her failure to join the corporation until now, all to the defendants' prejudice in violation of Civ. R. 15. The trial court found that even a liberal construction of the civil rules would not allow appellant to file a second amended complaint and denied appellant's motion.[2]

On March 16, 1989, the Gotshalls filed a motion for summary judgment as to appellant's claims against them asserting that the undisputed facts before the court demonstrated that the Montpelier Tavern Company, dba as The Bar, holds the liquor license and employed Nicolen, the bartender; that the corporation was, therefore, the real party in interest; and they, in their individual capacities, were not the proper parties and were entitled to summary judgment. Appellant, in opposition, argued that the day-to-day conduct of the Gotshalls demonstrated that they were engaged in the business as individuals and not as a corporation and that Nicolen had been hired by them individually and was not an employee of the corporation. Appellant submitted further that, since the Gotshalls had held themselves out as conducting the business as individuals, the trial court must disregard the corporate entity and find the shareholders personally liable. In

reply, the Gotshalls submitted that the undisputed evidence in the record, specifically the testimony of Robert Gotshall, demonstrated that Nicolen was an employee of the corporation, was paid out of the corporation's petty cash and that there was no evidence setting forth any reason to "pierce the corporate veil and ignore the corporate entity."

Also on March 16, 1989, appellees Shimps filed a motion for summary judgment as to appellant's claims against them. In support of their motion, the Shimps argued that R.C. 4399.18 requires evidence that they knowingly sold intoxicated beverages to a minor and that that person's intoxication proximately caused the death of the decedent. The Shimps submitted that the evidence in the record, even when construed in a light most favorable to appellant, demonstrated that appellee Wilcox drank only a single beer at their establishment, at 1:00 a.m. on the date in question, and that there was no evidence to support appellant's claim that appellee Wilcox was intoxicated or that his intoxication proximately caused the decedent's death. The Shimps submitted that to link the consumption of one beer at 1:00 a.m. to a death two hours later strained even the most liberal concept of proximate cause. The Shimps also submitted that the evidence in the record indicated that they did not knowingly serve Wilcox, a minor, any intoxicating beverages.

On that same date, appellees Hartsocks filed a motion for summary judgment as to appellant's claims against them setting forth the same arguments as the Shimps. The Hartsocks asserted that the evidence demonstrated that Wilcox drank only one beer at the Doubletree, at approximately 11:30 on the night in question, and therefore there was no evidence to support the claim that Wilcox was intoxicated at that time or that his intoxication proximately caused decedent's death. The Hartsocks also submitted that the evidence in the records indicated that they did not knowingly serve Wilcox, a minor, any intoxicating beverages.

Appellant, in opposition to the motions for summary judgment filed by the Hartsocks and Shimps, argued that their assertion that serving Wilcox intoxicating beverages was not the proximate cause of the death of the decedent must be rejected. Appellant submitted that the evidence indicated that Wilcox

had consumed a total of five to six beers on the evening in question, and had consumed more than one beer at the Doubletree on one visit and at least two beers on a later visit. As to the Shimps, appellant asserted that the determining factor was not the amount of beer purchased and consumed but rather the fact that Wilcox did purchase and consume beer at Shimp's in clear violation of R.C. 4301.69. Appellant submitted that the undisputed evidence in the record indicated that these appellees did in fact sell alcoholic beverages to Wilcox, a minor, in violation of R.C. 4301.69 and, therefore, their actions constituted negligence per se and that these sales were the proximate cause of the decedent's death. Appellant asserted further that lack of knowledge was not an element of or a defense to that section. Finally, appellant asserted that these individual appellees' actions need not be the sole cause of the ultimate injury since there may be more than one proximate cause and each separate; independent and wrongful act which together produces a situation resulting in injury to a party constitutes the proximate cause of such injury and, therefore, all of these appellees were liable as joint tortfeasors for their wrongful acts.

On March 17, 1989, appellant filed a motion for summary judgment against the Montpelier Tavern Company, dba The Bar,[3] the Gotshalls and Nicolen asserting that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. Appellant argued that the undisputed evidence in the record demonstrated that these parties violated R.C. 4301.69 by selling beer to Wilcox, a minor, and were responsible for the decedent's death. Appellant submitted that it was undisputed that Wilcox purchased and consumed beer at The Bar and other establishments on October 4 and 5, 1986, that he was not required to show his identification or verification of age at any of them and that he became inebriated following his consumption of that beer. Appellant submitted further that even though the testimony in the record was that the establishment owners and/or the bartenders did not remember serving Wilcox or seeing him in their establishments they did not dispute that he was there or that he purchased and consumed the beer. Appellant asserted that there were no genuine issues of fact as to Wilcox's

presence in The Bar and his purchase and consumption of beer there and that she was entitled to judgment as a matter of law on the basis that the sales and service constituted a violation of R.C. 4301.69 which constitutes negligence *per se.* Appellant also argued that these appellees were liable under R.C. 4399.18 for the decedent's death since Wilcox became intoxicated after being sold intoxicating beverages at The Bar.

On March 31, 1989, the Gotshalls filed a memorandum in opposition to appellant's motion for summary judgment stating that appellant had filed her motion for summary judgment against the Montpelier Tavern Company, which was not a party, and that they themselves as individuals had no personal liability since the corporation was the legal permit holder, the employer of Nicolen and the real party in interest and, therefore, they were entitled to judgment as a matter of law. The Gotshalls submitted further that a sale under R.C. 4399.18 must be the proximate cause of the decedent's death and that, although the evidence indicated that appellee consumed five to six beers that morning and was feeling good, it also demonstrated that he knew what he was doing and, therefore, there was no evidence of his intoxication or that his alleged intoxication caused the decedent's death. These appellees argued that the evidence demonstrated that Wilcox, upon seeing the disturbance, intentionally crossed the street to confront the decedent and was sober enough to hit the decedent first before the decedent hit him and to recognize that the decedent was seriously hurt and to run away.

Appellant also filed a motion for summary judgment against Wilcox on her claims of negligence and assault and battery.

On March 17, 1989, appellant filed separate motions for summary judgment against the Hartsocks, dba Doubletree, and the Shimps, dba Shimp's Unique Buffet, setting forth the same argument in both. As to the Hartsocks, appellant argued the undisputed evidence indicated that Wilcox had purchased and consumed beer at the Doubletree on two separate occasions that night and that no identification had been requested from him. Appellant pointed out that Sharon Hartsock had testified that, while she did not recall seeing Wilcox, she did recall seeing the two other individuals that he was with but did not recall selling beer to them. As to the

Shimps, appellant submitted that the undisputed evidence demonstrated that Wilcox had purchased a beer at the Unique Buffet at approximately 12:45 a.m., that no identification had been requested of him and that the Shimps did not recall whether or not Wilcox was there and did not know who he was. Appellant argued that these undisputed facts demonstrated that Wilcox, a minor, purchased and drank beer, in violation of R.C. 4301.69, and that this constituted negligence *per se.* Appellant argued further the Shimps were also liable under R.C. 4399.18 since the decedent's death was proximately caused by the actions of Wilcox who became intoxicated after being sold beer at these establishments.

On April 17, 1989, a hearing was held on the various motions for summary judgment and on May 8, 1989, the trial court filed its final judgment entry. As to the Gotshalls' motion for summary judgment, the trial court found that it was clear that Charles Nicolen, the bartender at The Bar, was an employee of the Montpelier Tavern Company, a corporation of which the Gotshalls were the sole stockholders and officers; that the evidence indicated that the Gotshalls operated The Bar and employed Nicolen, exclusively in their corporate capacity; and, that they had no direct involvement in the decedent's death. The court granted the Gotshalls' motion for summary judgment and dismissed appellant's complaint as to them.

As to the Shimps' motion for summary judgment, the trial court noted certain facts in the record as set forth by these appellees, including that appellee Wilcox consumed but one beer on the Shimps' premises, that Wilcox described himself as "feeling good" rather than being intoxicated, that the decedent was intoxicated, that the decedent's death occurred some two or two and one-half hours after Wilcox was on defendant's premises, that the decedent's altercation involved an employee of a different bar, that Wilcox's actions were "willful" rather than "negligent"; and, that the underlying cause of the decedent's death was an assault. The trial court found that when construing these facts most strongly in favor of appellant reasonable minds could only conclude that Wilcox's actions were not foreseeable. The court granted the Shimps' motion for summary judgment and dismissed appellant's complaint as to them.

As to the Hartsocks' motion for summary judgment, the trial court found that it was premised upon the same arguments and similar facts as the Shimps' motion and for the reasons set forth above granted the motion and dismissed appellant's complaint as to them.

The trial court denied appellant's motion for summary judgment against the Gotshalls, Hartsocks and Shimps and granted appellant's motion for summary judgment against Wilcox. As to appellant's motion for summary judgment against Nicolen, the trial court found that reasonable minds could differ on the issue of foreseeability, found that the motion for summary judgment was not well-taken and ordered that appellant's action against Nicolen be continued for trial.

## I.

In her first assignment of error appellant asserts that the trial court committed reversible error in denying her motion for leave to file a second amended complaint. Appellant submits that no justice has been done in denying her motion and that she has been greatly prejudiced by this denial. Appellant asserts that the trial court placed improper emphasis on the potential prejudice to the Gotshalls if the motion were to be granted rather than focusing upon the party to be brought in by the proposed amendment. Appellant argues that the Gotshalls had notice from the inception of this action, both individually and as the sole shareholders and officers of the Montpelier Tavern Company, and, therefore, the corporation did in fact have actual notice of the institution of the action and of the nature of the proceedings and would not be prejudiced by being required to maintain a defense on the merits. Appellant submits that the courts have permitted corrections of misnomers of parties where there is no confusion as to the identity of defendants and the party intended to be sued is in fact given notice of the suit, citing *Hardesty v. Cabotage* (1982), 1 Ohio St. 3d 114; *Morgan v. Bayview Hospital* (1959), 82 O.L.A. 499. Finally, appellant argues that the three conditions that must be satisfied, pursuant to Civ. R. 15(C) for an amended pleading to relate back to the date of the original complaint had been satisfied and, therefore, the trial court should have granted her leave to file her second amended complaint.

In response, the Gotshalls submit that the evidence shows that appellant was timely advised on October 20, 1987, that she had named the wrong party defendant but waited to correct the mistake until four and one-half months after the two year statute of limitations had expired and sixteen months after she had been advised of her mistake. These appellees submit that the requirements of Civ. R. 15(C) have not been met and the case law cited by appellant is inapplicable herein since appellant was aware of her mistake eleven months before the statute had run yet failed to correct it choosing instead to do nothing. Appellees also point out that appellant set forth no reasons as to why she waited to join the proper party defendant and that the Montpelier Tavern Company had a right to expect the suit against it to be filed timely absent any legitimate excuse. Appellees submit, therefore, that the trial court did not err in denying appellant's motion.

Civ. R. 15 provides in pertinent part:

"(A) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

"***

"(C) Relation back of amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of · the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the insti-

tution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." (Emphasis added.)

The grant or denial of leave to amend is discretionary. *Petersen v. Teodosio* (1973), 34 Ohio St. 2d 161. Where a motion for leave to file an amended complaint is not timely tendered and there is no apparent reason to justify the delay, a trial court does not abuse its discretion in denying the amendment. *Meadors v. Zaring Co.* (1987), 38 Ohio App. 3d 97.

Courts have permitted the substitution of a party in an action by the filing of an amended complaint after the applicable statute of limitations has run where there has been a mistake as to the identity of the intended party resulting in that party being improperly named, when the requirements of Civ. R. 15(C) are met. See *Hardesty, supra; Williams v. Jerry L. Kaltenbach Ent., Inc.* (1981), 2 Ohio App. 3d 113.

In this case, the claim set forth in the second amended complaint arises out of the same occurrence. The intended defendant had received notice of the institution of the action, was aware of the mistake made by appellant and promptly informed appellant of the error. Appellant, however, did nothing to correct the mistake until sixteen months after she was informed of her error. At that point, the proper party, the Montpelier Tavern Company, could not necessarily have known that an action would eventually be brought against it.

Upon consideration of all of the circumstances set forth above, this court cannot say that the trial court abused its discretion by finding that the filing of the second amended complaint would prejudice the intended defendant and denying appellant's motion. Accordingly, appellant's first assignment of error is found not well-taken.

II.

In her second assignment of error appellant asserts that the trial court erred in granting summary judgment, in favor of the Gotshalls, Shimps and Hartsocks and denying her motions for summary judgment. Appellant submits that the undisputed evidence in the record, specifically Wilcox's deposition, indicates that Wilcox, a minor, purchased and consumed beer at The Bar, Doubletree and Shimp's on the evening in question and, therefore, each of the appellees clearly violated R.C. 4301.69 which violation constitutes negligence *per se*. Appellant submits that reasonable minds could conclude that the five or six beers consumed by Wilcox that night affected his behavior in view of the fact that he struck decedent shortly thereafter. Appellant asserts that a jury could reasonably conclude that the sale and service of beer to Wilcox, in violation of R.C. 4301.69, left him in an intoxicated condition which condition proximately caused him to strike the decedent, causing his death. Finally, appellant asserts that the fact that appellee Wilcox was sold beer at several drinking establishments does not absolve the appellees of individual liability since they are all liable as joint tortfeasors.

In response the Hartsocks and Shimps assert that the trial court did not err in granting their motion for summary judgment arguing that the proximate cause of decedent's death was Wilcox's intentional act. These appellees assert further that R.C. 4399.18 is the dispositive statute herein and not R.C. 4301.69 since R.C. 4399.18 specifically provides for the civil liability of liquor permit holders. Appellees argue that R.C. 4399.18 imposes liability on permit holders only for negligent actions of intoxicated persons and only if their intoxication is the proximate cause of the final injury. Finally, these appellees submit that there is no evidence in the record that Wilcox was intoxicated and, even assuming that he was intoxicated, there is no evidence that his intoxication proximately caused the decedent's death. Rather, the evidence demonstrates that Wilcox acted intentionally in striking the decedent and claimed self-defense.

The Gotshalls in response to appellant's second assignment of error submit that the trial court correctly held that they were entitled to summary judgment since the undisputed facts demonstrate that Nicolen was employed by the Montpelier Tavern Company and not by either of them and that they did not themselves sell or serve beer to appellee Wilcox. The Gotshalls also note that appellant failed to set forth any reason as to why the summary judgment in their favor should not be affirmed.

## A.

The court notes initially that appellant, in challenging the trial court's decision, sets forth the same arguments for all of the appellees and does not specifically challenge the trial court's findings as to the Gotshalls who were granted summary judgment on a different basis than were the Shimps and Hartsocks. Specifically, the trial court found that the undisputed facts in the record demonstrated that the Gotshalls were operating exclusively in their corporate capacity and had, no direct individual involvement in the decedent's death. Since appellant has set forth no arguments specifically challenging the trial court decision as to the Gotshalls, this court finds that the trial court did not err in granting their motion for summary judgment and in denying appellant's motion for summary judgment as to them. Therefore, this court will consider the arguments set forth in appellant's second assignment of error only as they relate to the Hartsocks and Shimps.

## B.

This court, in considering appellant's second assignment of error, must first determine which of the statutory provisions are applicable herein. In her complaint and in her motion for summary judgment appellant alleges causes of action against the appellees based upon both R.C. 4301.69 and 4399.18. In her brief on appeal, however, appellant argues that appellees, by selling intoxicating beverages to Wilcox, a minor, violated R.C. 4301.69, that this violation constitutes negligence *per se* and that the trial court erred in ignoring the violation of R.C. 4301.69 and granting summary judgment for the appellees. Appellant sets forth no arguments concerning R.C. 4399.18. Appellees respond that the applicable law in this case is R.C. 4399.18 and not R.C. 4301.69.

In determining what law is to be applied, it is necessary to briefly examine the history of actions brought by injured parties against providers of intoxicating beverages.

At common law, it was the general rule that there was no tort cause of action against one who furnished intoxicating liquor to another, either by sale or gift, when that person, as a consequence of his intoxication, caused injury or damage to a third person. *Mason v. Roberts* (1973), 33 Ohio St. 2d 29,

33; *Settlemeyer v. Wilmington Veteran's Post No. 49* (1984), 11 Ohio St. 3d 123, 125. The reasoning behind the rule was that it was the consumption rather than the sale of the intoxicating liquor that was the proximate cause of the harm done the third party. *Mason, supra,* at page 33.

On October 1, 1953, R.C. 4399.01, known as the Dram Shop Act, became effective, and provides:

"A husband, wife, child, parent, guardian, employer, or other person injured in person, property, or means of support by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of a person, after the issuance and during the existence of the order of the department of liquor control prohibiting the sale of intoxicating liquor as defined by section 4301.01 of the Revised Code to such person, has a right of action in his own name, severally or jointly, against any person selling or giving intoxicating liquors which cause such intoxication, in whole or in part, of such person."

In *Mason, supra,* the Supreme Court of Ohio addressed the issue of whether R.C. 4399.01 constituted the exclusive remedy for the recovery of damages in a wrongful death action brought against a liquor permit holder who sold intoxicating liquor to an intoxicated patron who then committed an assault and battery on another patron who subsequently died. In *Mason,* the name of the intoxicated patron did not appear on the "blacklist" or order set forth by the Department of Liquor Control pursuant to R.C. 4399.01. The plaintiff in *Mason* alleged that the permit holder knew or should have known that the patron became violent, abusive, and dangerous when intoxicated and that the permit holder and her agents violated R.C. 4301.22(B) and (C),[4] which prohibits the sale of beer or intoxicating liquors to "an intoxicated person" or to "any individual who habitually drinks intoxicating liquor to excess." The *Mason* court held the R.C. 4399.01 did not provide the exclusive remedy against a liquor permit holder to recover damages for the death of a bar patron. *Id.* at 29. In so holding, the court noted that the common law principle, as set forth above, had diminished over the years resulting in two exceptions: (1) where the seller knew the purchaser could not refrain from drinking, and (2) where the sale is contrary to law. *Id.* at 33. The *Mason* court

found that in that case both exceptions were raised by the allegations in the complaint. *Id.* In subsequent cases, the Supreme Court has interpreted R.C. 4301.22 as imposing a statutory duty upon liquor permit holders to exercise reasonable care to protect the public from violent acts of an intoxicated person causing injury both on and off the premises. See *Great Central Ins. Co. v. Tobias* (1988), 37 Ohio St. 3d 127, 128-129; *Gressman v. McClain* (1988), 40 Ohio St. 3d 359, 362.

In *Misteff v. Wheeler* (1988), 38 Ohio St. 3d 112, the Supreme Court of Ohio determined that R.C. 4301.69, as effective August 19, 1982, also created a duty on the part of a social host to refrain from furnishing alcohol to a minor and, therefore, the host may be civilly liable for damages to a third party for a violation of that duty. That version of R.C. 4301. 69[5] provided:

"No person shall sell intoxicating liquor to a person under the age of twenty-one years or sell beer to a person under the age of nineteen, or buy intoxicating liquor for, or furnish it to, a person under the age of twenty-one years, or buy beer for or furnish it to a person under the age of nineteen, unless given by a physician in the regular line of his practice, or by a parent or legal guardian.

"In proceedings before the liquor control commission, no permit holder, his employee or agent charged with a violation of this section shall, for the same offense, be charged with a violation of division (A) of section 4301.22 of the Revised Code."

In 1986, the General Assembly codified the common law as to the liability of, liquor permit holders and their employees for the injurious actions of intoxicated patrons by the enactment of R.C.4399.18:

"§ 4399.18 Limitations on liability for acts of intoxicated person.

"Notwithstanding section 2307.60 and except as otherwise provided in this section and in section 4399.01 of the Revised Code, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or his employee who sold beer or intoxicating liquor to the intoxicated person unless the injury, death, or property damage occurred on the permit holder's premises or in a parking lot under his control and was proximately caused by the negligence of the permit holder or his employees. A person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

"(A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:

"(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

"(2) A person in violation of division (C) of section 4301.22 of the Revised Code.

"(3) A person in violation of section 4301.69 of the Revised Code;

"(B) The person's intoxication proximately caused the personal injury, death, or property damage.

"Notwithstanding sections 4399.02 and 4399.05 of the Revised Code, no person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against the owner of a building or premises who rents or leases the building or premises to a liquor permit holder against whom a cause of action may be brought under this section, except when the owner and the permit holder are the same person." The Supreme court of Ohio, in *Gressman, supra,* briefly addressed the action of the legislature by stating that in enacting this statute the General Assembly clearly set forth the preexisting public policy on this issue and codified the standard of conduct to be applied in determining liability of a permit holder of his employees.[6] *Id.* at 362-363.

Upon reviewing the case law set forth above, the provisions of R.C. 4399.18 and the legislative history underlying the enactment of that section, this court finds that it was clearly the intent of the. General Assembly that all causes of action brought against liquor permit holders, or their employers for the negligent acts of intoxicated patrons, be brought pursuant to either R.C. 4399.01 or R.C. 4399.18.

This court finds, therefore, that as to the allegations of appellant's complaint which are

premised upon violations of R.C. 4301.69 there is no genuine issue of material fact and that the Hartsocks and the Shimps are entitled to judgment as a matter of law.

This court must next consider whether the trial court erred in granting the Hartsocks' and Shimps' motions for summary judgment on the R.C. 4399.18 claims. That section provides that a person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of the intoxicated patron occurring off the premises only when both of the following are shown by a preponderance of the evidence, first, that the permit holder or his employee knowingly sold an intoxicating beverage to a person in violation of either R.C. 4301.22(B) or (C), or R.C. 4301.69; and second, that that person's intoxication proximately caused the personal injury, death or property damage. As set forth in *Gressman, supra,* R.C. 4399.18 requires actual knowledge on the part of the permit holder or his employee.

A summary of the evidence that was before the court is as follows. Appellee Wilcox testified in his deposition that on the evening of October 4, 1986, he worked until 11:00 p.m. and then drove with his cousin Suzette Downs to her apartment in downtown Montpelier. Wilcox testified that, although he was under the drinking age, he met several of his friends, John Downs, Ray Gibbs and Lonnie Clark to go out drinking. At approximately 11:30 p.m., they went to the Doubletree where Wilcox purchased and consumed one beer. Wilcox testified that he was not asked to produce identification or age verification at the Doubletree. The group remained there approximately ten to fifteen minutes and then, around midnight, went on to The Bar where Wilcox purchased and consumed another beer. Wilcox testified that he was not asked to show identification at The Bar. Wilcox testified further that at about 12:20 a.m., they left The Bar, went to McCholski's Pub but could not get served, and then went on to Shimp's where he purchased and consumed one more beer and again was not requested to show any identification. Wilcox testified that they remained at Shimp's for twenty-five minutes or so and then went back to the Doubletree where he purchased and consumed an additional two beers and ate hot dogs and chips. Wilcox testified that just he

and Ray Gibbs then went back to The Bar where he recalls purchasing and consuming one more beer. They remained there until last call and then left. Wilcox testified that after leaving The Bar he walked alone to the Sohio station about two blocks away to purchase some cigarettes. As he was returning to his cousin's apartment across the street from The Bar he heard a commotion in The Bar and walked across the street to see what was happening. He testified that he walked in and was told to leave so he walked back across the street and met his friend Ray who had come down from the apartment to see what the commotion was. Wilcox testified that while they were standing on the sidewalk they saw the bartender at The Bar throw two people out of the bar. Wilcox testified that he then saw the bartender and another individual come out and start beating up the two who had been thrown out. He testified that he saw one man kick the decedent in the chest and face while he was down. Wilcox stated that the decedent appeared drunk, was staggering and was bleeding. Wilcox testified that the bartender went back in the bar and the decedent's friend helped him up. The decedent was staggering so Wilcox walked across the street to check on the decedent at which point the decedent was hollering and kicking on the door of The Bar. The decedent then turned suddenly towards Wilcox with his fist doubled up. Wilcox testified that he did not know if decedent was going to swing at him so he hit him first and he went down. When asked if he was feeling pretty good after having consumed five or six beers that evening, Wilcox replied that he felt pretty good but that he knew what he was doing.

Suzette Downs, Wilcox's cousin, testified in her deposition that she lived in an upstairs apartment across from The Bar and that that night she was sitting looking out her window and saw the decedent being thrown out of The Bar, saw him being kicked and later saw him pounding on the door of the bar. She testified that she saw Wilcox hit the decedent and saw the decedent fall. She could not determine the decedent's condition from where she was.

Also before the court was the deposition of Steve Altaffer. Altaffer testified that he was with the decedent that night, drinking at The Bar, and that he himself had had three to four beers and was feeling good. He testified that the decedent seemed fine and did

not seem intoxicated. Altaffer testified that they were both thrown out of The Bar about 2:20 a.m. or so because they were still drinking after the last call. He did not see what was going on with the decedent because he was shown out the door by someone else. Altaffer testified that once outside of the bar he saw the decedent yelling and kicking at the door and then saw Ray Gibbs and another person come across the street. Altaffer testified that Gibbs started pushing him down the street and fighting with him and therefore he did not see the decedent again until he saw him lying in the street and Gibbs and the other person running off.

In his deposition testimony, Paul Dormire testified that he met up with Gibbs, Wilcox and several others that night and drank with them for a while. Dormire testified that he did not see how much Wilcox had to drink but remembers that Wilcox acted like he may have been feeling a little "buzz" or something but that he had no problem walking. Dormire testified that he left The Bar with the others and then went upstairs to Suzette Down's apartment while the others stayed down to watch the commotion at the bar when decedent and another person were thrown out. Dormire testified that from the window of the apartment he saw the decedent being kicked in the head and the side then saw him get up and stagger as if he could barely stand up. He then saw Wilcox and Ray Gibbs walk over to the decedent and Altaffer, saw Gibbs and Altaffer pushing each other, saw Wilcox walk up behind the decedent, saw the decedent turning fast as if he was going to swing and saw Wilcox swing and hit the decedent who fell and hit his head. Dormire testified that after the incident Wilcox did not look drunk but could have been partially but not totally drunk and had no trouble walking. Dormire also testified that the decedent appeared drunk when he was thrown out of the bar.

In his deposition testimony John Shimp the co-owner of Shimp's testified that he did not know appellee Wilcox or recall him being at Shimp's that night but that he could have been there. Shimp testified that he recalls that Gibbs was there with a group of people that night and that Gibbs came up and ordered three beers.

Appellee Rodney Hartsock testified in his deposition that he was the co-owner of the Doubletree and was fairly familiar with his crowd of customers and that he did not recall Wilcox being there on the night in question. Hartsock testified he recalled that Gibbs and Downs were there that night with another individual that he did not know and that Gibbs and Downs each purchased a beer around midnight but he did not recall selling any to Wilcox and did not see him consuming alcohol.

Appellee Sharon Hartsock in her deposition testified that she recalled Gibbs and Downs being at the Doubletree with a group of people that night but that she did not serve them. She stated that she knew they were younger but knew that Gibbs and Downs were of drinking age. She testified that she did not know what they were drinking that night.

Appellee Nicolen testified in his deposition that he was bartending at The Bar that night and recalls the decedent being there from 11:30 or 12:00 and that at closing he was still there with a drink. Nicolen testified that he asked decedent for his drink twice with no success and that the third time he took it from his hand at which point the decedent got upset and took a swing at him grazing his chin. Nicolen testified that he then hit the decedent knocking him down, picked him up and walked him to the door, showed him out and locked the door behind him. Nicolen testified that the decedent seemed fine and that there was no indication that he was drunk but when he began kicking the door Terry Warner, who was inside the bar, became upset and went outside. Nicolen testified that he also went outside at which time the decedent jumped him and they went down rolling into the street. Nicolen testified that, as he got up and went back inside, he saw Terry Warner and Stephen Altaffer tussling. Nicolen testified that later he looked out the window and saw the decedent lying in the street with blood coming from his mouth and nose and two guys running down the alley. Nicolen testified that he knows Ray Gibbs but did not recall seeing Gibbs or Wilcox in The Bar that night but that he could have served them mistakenly. Nicolen testified, however, that if he does not know somebody he checks their identification before serving them.

. Pursuant to R.C. 4399.18, appellant has a cause of action against appellees for the

death of her decedent only if she can demonstrate by a preponderance of the evidence that appellees or their employees *knowingly* sold an intoxicating beverage to Wilcox, under one of the conditions set forth in R.C. 4399.18(A)(1), (2) or (3) and that Wilcox's intoxication proximately caused the decedent's death.

Upon consideration of all the evidence in the record and as summarized above in a light most favorable to appellant, this court finds that, while there remains a genuine issue of fact as to whether or not appellee Wilcox was intoxicated at the time of the incident and whether or not his intoxication was the proximate cause of the decedent's injury and death, appellant has not set forth evidence that raises a genuine issue of fact that is material to whether or not any of the appellees knowingly sold an intoxicating beverage to Wilcox in violation of one of the conditions set forth in R.C. 4399.18(A) (1), (2) or (3). This court finds, therefore, that appellees Hartsocks and Shimps are both entitled to judgment as a matter of law and that the trial court did not err in granting summary judgment in favor of the Hartsocks and Shimps and against appellant.

Accordingly, appellant's second assignment of error is found not well-taken.

Upon consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Costs assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER, J., and ABOOD, J., concur.

———

[1] Also named as a defendant was Francis Huber McCholski, dba McCholski's Pub, however, on October 22, 1987, appellant filed an amended complaint for the purpose of dismissing this defendant and clarifying a number of misnomers and misspellings.

[2] The trial court issued its final judgment entry denying appellant's motion on May 17, 1989.

[3] This motion naming the Montpelier Tavern Company was filed prior to the trial court's denial of appellant's motion for leave to file a second amended complaint. Therefore, in considering appellant's motion we will do so only as it pertains to the Gotshalls individually.

[4] R.C. 4301.22 places conditions upon the sale of alcoholic beverages, establishes standards for liquor permit holders and provides criminal penalties for violations by permit holders and a basis for the revocation and suspension of a violator's liquor permit.

[5] R.C. 4301.69 sets forth the legal age for the purchase and consumption of alcoholic beverages and provides criminal penalties for violations by permit holders and a basis for the revocation and suspension of a violators liquor permit.

[6] In *Gressman*, the cause of action accrued *prior* to the effective date of R.C. 4399.18, and therefore, the court held that for causes of action arising before the effective date of that statute, the holder of a liquor permit under R.C. 4303 may be liable to third persons for injuries or death occurring off the premises of the permit holder where said injuries are caused by a person to whom the sale of intoxicating beverages has been made by the permit holder or his employee in violation of R.C. 4301.22(B). *Id.* at 362.